IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

BRADLEY D. MOHRING,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C13-2048

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.    INTRODUCTION .................................. 2

II.   PROCEDURAL BACKGROUND ....................... 2

III.  PRINCIPLES OF REVIEW ........................... 2

IV.  FACTS .......................................... 4
    A.   Mohring's Education and Employment Background ............ 4
    B.   Administrative Hearing Testimony ....................... 4
       1.   Mohring's Testimony ........................... 4
       2.   Vocational Expert's Testimony .................... 5
    C.   Mohring's Medical History ........................... 6

V.   CONCLUSIONS OF LAW ............................ 9
    A.   ALJ's Disability Determination ........................ 9
    B.   Objections Raised By Claimant ....................... 11
       1.   Credibility Determination ...................... 12
       2.   Dr. Harding's Opinions, RFC Assessment, and Substantial
            Evidence ................................. 16

VI.  CONCLUSION ................................... 20

VII. ORDER ........................................ 20

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Bradley D. Mohring on June 24, 2013, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Mohring asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Mohring requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On June 24, 2013, Mohring filed this action for judicial review. The Commissioner filed an Answer on November 14, 2013. On December 16, 2013, Mohring filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing work that exists in significant numbers in the national economy. On February 13, 2014, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On September 25, 2013, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the

Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal."

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial

3

of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Mohring's Education and Employment Background

Mohring was born in 1962. He completed the tenth grade in high school At the administrative hearing, Mohring testified he was enrolled in special education classes while in school. Mohring's past work included electronics technician, maintenance mechanic, maintenance engineer, and molding cutter.

### B. Administrative Hearing Testimony

#### 1. Mohring's Testimony

At the administrative hearing, Mohring testified that he is not claiming disability due to any physical problems. Instead, Mohring claims bipolar disorder. Mohring also testified he suffers from depression. Mohring's attorney inquired of Mohring how these various disorders affect him. Mohring explained that: (1) his bipolar disorder causes him

to become angry and sometimes violent if he makes a mistake; (2) ADHD causes his mind to race, making attention and concentration difficult; (3) he suffers from anxiety when he is around groups of people, even groups of 2 or 3 other people; (4) with OCD, he likes things to be in a specific order and it causes him stress if things are moved out of order; (5) his PTSD relates to fighting and violence by his parents when he was a young boy; and (6) his dissociative disorder is based on three different personalities that come out depending upon the situation. Lastly, Mohring's attorney asked Mohring whether he believed he was able to work:

> Q: Do you think you're able to work anymore?
> A: I don't believe I can.
> Q: Tell the Judge why.
> A: With the depression, it comes and goes. Sometimes it's a day. Sometimes it can last up to a month. These doctors have tried I don't know how many medicines on me. They either work for maybe a month, two months or they don't work at all. And every time we get a new drug, there's always a side effect of some sort that I get.

(Administrative Record at 55-56.)

### 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Vanessa May with a hypothetical for an individual who is:

> limited to tasks that would be learned in 30 days or less, involving no more than simple work related decisions, with only occasional workplace changes. Only occasional interaction with public, coworkers and supervisors and no work at a production rate pace.

(Administrative Record at 66.) The vocational expert testified that under such limitations, Mohring would be precluded from performing his past relevant work, but could perform the following jobs: (1) laundry folder (800 positions in Iowa and 95,000 positions in the nation), (2) mail clerk (700 positions in Iowa and 64,000 positions in the nation), and

5

(3) janitor (12,000 positions in Iowa and 2,000,000 positions in the nation). The ALJ further inquired:

> Q: Now, if we had an individual who was unable to sustain concentration and attention for two-hour periods of time, in other words the ability to stay focused would be for less than two hours at a time, how does a limitation like that affect the ability to perform work activities?
> A: Well, I would say if they're off task and can't concentrate, then they're certainly not going to be competitive.
> Q: If we have an individual who is absent from work three or more times a month, how does a limitation like that affect the ability to perform competitive work?
> A: Well, that would not be consistent with full-time employment.

(Administrative Record at 67.) Mohring's attorney also questioned the vocational expert, and asked her whether an individual who had to work at a slow pace for up to one-third of the day would be employable. The vocational expert responded that such a limitation would preclude competitive employment.

### C. Mohring's Medical History

On July 30, 2009, Mohring met with Dr. William Crowley, M.D., complaining of sleep problems and nightmares. In reviewing Mohring's history, Dr. Crowley noted that Mohring suffered from depression, and had been taking medication to treat it. Dr. Crowley also noted that Mohring had difficulties with anxiety, OCD, and maintaining his temper. Upon examination, Dr. Crowley diagnosed Mohring with bipolar disorder, ADHD, OCD, and possible intermittent explosive disorder. Dr. Crowley recommended medication as treatment.

On August 27, 2009, Mohring returned to Dr. Crowley for a follow-up appointment. Dr. Crowley found that Mohring "had been doing pretty well on the medication list. He had seen a marked improvement in the area of sleep with decreased

depression with secession of nightmares. His anxiety has been down, depression has improved."[1] At a follow-up appointment on September 11, 2009, Dr. Crowley found continued good response to medication. However, on September 25, Dr. Crowley noted that Mohring was having difficulty sleeping even with strong medication. On October 26, 2009, Dr. Crowley found that Mohring:

> is almost agoraphobic and anxious to the point that he can't carry out tasks at work even though he's quite knowledgeable, experienced, and capable. He has such social anxiety and panicky episodes. He also is diagnosed with ADHD combined type so he's received no stimulant treatment in quite some time. Today, he's talking about his difficulty in negotiating everyday tasks of life. Part of the problem is that he has ADHD and when he can't organize well enough he becomes disorganized. His ADHD overwhelms his ability to order things the way his OCD demands. He presents as a nervous wreck.

(Administrative Record at 261.) Dr. Crowley continued to treat Mohring with medication.

On December 12, 2010, Dr. Jennifer Ryan, Ph.D., reviewed Mohring's medical records and provided Disability Determination Services ("DDS") with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Mohring. On the Psychiatric Review Technique assessment, Dr. Ryan diagnosed Mohring with ADHD, bipolar disorder, and social anxiety disorder. Dr. Ryan determined that Mohring had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Ryan determined that Mohring was moderately limited in his ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others

---

[1] Administrative Record at 263.

7

without being distracted by them, complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. Dr. Ryan concluded that "[t]he preponderance of the evidence in the file supports the assertion that [Mohring] is able to follow simple instructions and perform simple, routine, repetitive work tasks in work environments with only minimal interpersonal demands."[2]

On September 12, 2011, Dr. James Harding, Ph.D., administered multiple psychological tests to Mohring. The tests administered included Dissociative Experiences Scale-II, Dean Adolescent Inventory Scale, Self-Defeating Belief Scale, Burns Depression Checklist, Burns Anxiety Inventory, panic and agoraphobia testing, social anxiety testing, PTSD testing, OCD testing, and an anger scale. In interpreting Mohring's scores, Dr. Harding found that Mohring suffered from "extreme" depression, "extreme" anxiety, "severe" agoraphobia, "severe" social anxiety, "high-moderate" PTSD, and "extreme" OCD.

On September 19, 2011, at the request of Mohring's attorney, Dr. Harding filled out "Mental Impairment Interrogatories" for Mohring. Dr. Harding diagnosed Mohring with bipolar disorder, ADHD, OCD, PTSD, and likely dissociative disorder. Dr. Harding found the following signs and symptoms for Mohring: poor memory, sleep disturbance, personality change, mood disturbance, recurrent panic attacks, paranoia, difficulty thinking and concentrating, social withdrawal and isolation, decreased energy, manic syndrome, generalized persistent anxiety, and hostility and irritability. Dr. Harding noted that Mohring has dealt with many of these problems and symptoms for his entire life.

---

[2] Administrative Record at 277.

Dr. Harding opined that Mohring's prognosis was "very guarded." Dr. Harding further opined that Mohring would miss more than three days per month from work due to his impairments or treatment for his impairments. Dr. Harding determined that Mohring had marked limitations in his ability to: remember locations and work-like procedures, understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods of time, maintain regular attendance, work in coordination with or proximity to others without being distracted by them, complete a normal workweek without interruptions from psychologically-based symptoms, interact appropriately with the general public, respond appropriately to changes in the work setting, and travel in unfamiliar places or use public transportation. Lastly, Dr. Harding also determined that Mohring had the following limitations: moderate-marked restriction of activities of daily living, extreme difficulties in maintaining social functioning, and constant difficulties in maintaining concentration, persistence, or pace.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Mohring is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his

or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Mohring had not engaged in substantial gainful activity since June 15, 2009. At the second step, the ALJ concluded from the medical evidence that Mohring has the following severe impairments: depression, anxiety, bipolar disorder, ADHD, and OCD. At the third step, the ALJ found that Mohring did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Mohring's RFC as follows:

> [Mohring] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Mohring's] interaction with the public, coworkers and supervisors would be limited to occasional. He could perform no work at a production rate pace. Furthermore, [Mohring] would be limited to jobs in which the tasks could be learned in 30 days or less, involve no more than simple work-related decisions and involve only occasional work place changes.

(Administrative Record at 19.) Also at the fourth step, the ALJ determined that Mohring was unable to perform any of his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Mohring could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Mohring was not disabled.

### B. Objections Raised By Claimant

Mohring argues that the ALJ erred in three respects. First, Mohring argues that the ALJ failed to properly evaluate his subjective allegations of disability. Second, Mohring

11

argues that the ALJ failed to properly evaluate the opinions of Dr. Harding, his treating psychologist. Lastly, Mohring argues that because the ALJ improperly evaluated Dr. Harding's opinions, the ALJ's RFC assessment is not supported by substantial evidence on the record as a whole.

### 1. *Credibility Determination*

Mohring argues that the ALJ failed to properly evaluate his subjective allegations of disability. Mohring maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Mohring's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the

objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In her decision, the ALJ determined that:

> Since [Mohring's] testimony regarding his limitations regarding his mental impairments are highly subjective, the credibility of his testimony and allegations is of the utmost importance. Having found numerous inconsistencies between [Mohring's] reported limitations and the record as a whole, I cannot find [his] testimony credible. Clearly, [Mohring] has been treated for numerous mental impairments; however, the persistence and limiting effects of those impairments are not consistent with the record for several reasons. First,

[Mohring] alleged difficulties with mental impairments for most, if not all, of his life. Yet, [he] worked consistently until 2009. The record reveals that [his] allegedly disabling impairments were present at approximately the same level of severity prior to the alleged onset date. The fact that the impairments did not prevent [him] from working at that time strongly suggests that it would not currently prevent work. Additionally, [Mohring] testified that he only worked for two weeks since 2009. His testimony is inconsistent with the earnings record showing numerous jobs and earnings since the alleged onset date.[3] [Mohring] materially misrepresented his work activity since the alleged onset.

[Mohring's] treatment record is also inconsistent with his allegations of total disability. He alleged at the hearing that medications have not helped his condition. However, his treatment records show, after some adjustments, his medications helped control his symptoms. [He] also alleged nightmares every night for the past 15 years; but again, the treatment records show that he stopped having nightmares with proper use of medication. [Mohring] also alleged "drug hangovers" and seizures with the use of medications. Although [Mohring] has alleged extreme side effects from the use of medications, the medical records do not corroborate those allegations. In addition, there is evidence that [Mohring] has not been entirely compliant in taking prescribed medications. The records show that he voluntarily stopped taking some medications that had been working for him because he did not like the sexual side effects. . . . One could also reasonably infer from the records that [Mohring's] symptoms were exacerbated by situational factors that, if resolved, would dramatically improve his condition. Since the alleged onset date, [Mohring] reported difficulties finding work, financial problems and even contemplated suicide due to relationship problems. The findings from the MCMI-III also demonstrated situation stressors significantly contributed

---

[3] *See* Administrative Record at 165-168 (showing earnings in 2009, 2010, and 2011).

> to his overall mental state. This test showed [Mohring] has a tendency to be self-deprecating, complain excessively or be extremely vulnerable and defenseless. It was noted that his score might represent an anxious plea for help because of his inability to cope with current life stresses. Prior to the alleged onset, while [he] was working, he did not have significant life stressors that caused these symptom exacerbations. With regard to [Mohring's] allegations of multiple personalities, there is no evidence that any clinician has ever observed [his] multiple personalities, nor was he ever treated for this alleged problem. Thus, the evidence strongly suggests that [Mohring] has exaggerated symptoms and limitations. Overall, the evidence of record does not support [Mohring's] allegations of disabling mental impairments. Due to the numerous inconsistencies in the record, I cannot find [his] allegations fully credible.
>
> [Mohring's] activities of daily living are also inconsistent with his allegations of total disability. [Mohring] completed several function reports that indicated [he] spends his time cleaning and may go to the store once a week. [Mohring] is able to complete personal care; prepare meals; go out alone; and manage finances independently. Overall, [his] activities of daily living are not limited to the extent one would expect, given the complaints of disabling symptoms and limitation that preclude him from work activities.

(Administrative Record at 22-23).

It is clear from the ALJ's decision that she thoroughly considered and discussed Mohring's treatment history, medical history, functional restrictions, effectiveness of medications, activities of daily living, and work history in making her credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Mohring's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a

claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Mohring's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. *Dr. Harding's Opinions, RFC Assessment, and Substantial Evidence*

Mohring argues that the ALJ failed to properly evaluate the opinions of his treating psychologist, Dr. Harding. Specifically, Mohring argues that the ALJ's reasons for discounting Dr. Harding's opinions are not supported by substantial evidence in the record. Similarly, Mohring argues that the ALJ's RFC assessment is flawed and not supported by substantial evidence because the ALJ failed to properly consider Dr. Harding's opinions. Mohring concludes that this matter should be remanded for further consideration of Dr. Harding's opinions and further evaluation of his RFC.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's

statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id.*.); *Strongson v. Barnhart,* 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear

to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

Additionally, when an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697(citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

The Court will first consider Mohring's argument as it relates to Dr. Harding's opinions. In her decision, the ALJ addressed Dr. Harding's opinions as follows:

> I have also considered the medical opinion of James Harding, Ph.D., [Mohring's] treating psych[ologist]. A treating physician's opinion is given controlling weight only if it is well supported and not inconsistent with other substantial evidence. Dr. Harding submitted responses to "Mental Impairment Interrogatories" that opined [Mohring] met listings 12.04 and 12.06. However, the doctor specifically noted that the restrictions were based on [Mohring's] reported symptoms and limitations during an interview. Thus, the doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Mohring], and seemed to uncritically accept as true most, if not all, of what [he] reported. Yet, as

> explained elsewhere in this decision, there exist good reasons for questioning the reliability of [Mohring's] subjective complaints. I find that Dr. Harding's opinion is not supported and is inconsistent with other substantial evidence. Therefore, his opinion is accorded little weight.

(Administrative Record at 23.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Harding. The Court also finds that the ALJ provided "good reasons" for rejecting Dr. Harding's opinions, particularly when taking into account the ALJ's thorough and well supported credibility determination for Mohring.[4] *See* 20 C.F.R. § 404.1527(d)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

The Court will next address the ALJ's RFC assessment. Because the Court finds that the ALJ properly weighed Dr. Harding's opinions, the Court concludes that Mohring's argument that the ALJ's RFC assessment is flawed and not supported by substantial evidence is without merit. Significantly, the Court finds that the ALJ thoroughly addressed the medical evidence in the record.[5] Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered Mohring's medical records, observations of treating and non-treating physicians, and Mohring's own description of his limitations in making her RFC assessment for Mohring.[6] *See Lacroix*, 465 F.3d at 887. Furthermore,

---

[4] *See* Section *V.B.1* of this decision (finding that the ALJ's credibility determination is supported by substantial evidence).

[5] *See* Administrative Record at 20-22 (providing thorough review of Mohring's medical history).

[6] *See Id.* at 20-24 (providing a thorough and detailed discussion of the relevant
(continued...)

the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, and properly weighed the opinion evidence of Dr. Harding, Mohring's treating psychologist, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618.

## VI. CONCLUSION

The Court finds that the ALJ properly determined Mohring's credibility with regard to his subjective complaints of disability. The ALJ also properly considered and addressed the medical evidence and opinions in the record, including the opinions of Dr. Harding. Finally, the Court finds that the ALJ made a proper RFC assessment for Mohring. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 24th day of June, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

---

[6] (...continued)
evidence for making a proper RFC determination as it relates to Mohring's impairments).